# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2711
_____

Nuuh Amir Na'im,

*Plaintiff - Appellant,*

v.

James Beck, Doctor, Arkansas Department of Corrections/Wellpath (Cummins Unit)(originally names as Beck); Carol Chisom, RN, Director of Nurses, Arkansas Department of Corrections/Wellpath (Cummins Unit)(originally names as C Chisom); Lerizza Nunag, APRN, Arkansas Department of Corrections/Wellpath (Cummins Unit)(originally named as Nunag); Rose Newby, APARN, Arkansas Department of Corrections/Wellpath (Cummins Unit)(originally named as Newby); Shakita Green, CNA, Arkansas Department of Corrections/Wellpath (Cummins Unit)(originally named as Green),

*Defendants - Appellees.*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: November 18, 2025
Filed: April 15, 2026
_____

Before COLLOTON, Chief Judge, SHEPHERD and ERICKSON, Circuit Judges.
_____

COLLOTON, Chief Judge.

Nuuh Amir Na'im, an inmate in Arkansas, sued medical staff from the Arkansas Department of Corrections and alleged violations of the Eighth Amendment. The district court[*] dismissed some of Na'im's claims for failure to exhaust administrative remedies, and the court granted summary judgment for the defendants on the remaining claim. We affirm.

I.

Na'im dislocated his right pinky finger while playing basketball at Cummins Unit, a state prison facility, on May 12, 2021. He visited the prison's infirmary, and staff placed his hand in a splint and administered Ibuprofen. Medical staff also ordered an x-ray. The next day, Na'im submitted an emergency grievance that said he was still in pain. In response, a nurse at the prison's infirmary gave Na'im a dose of Ibuprofen and placed him on the "medical lay-in list for an emergency x-ray." The x-ray revealed that Na'im's finger was dislocated and had an "abnormal widening of the scapholunate interval," but there was "no definite fracture."

On May 19, Dr. James Beck and Nurse Lerizza Nunag attempted to realign Na'im's dislocated finger. They were unsuccessful, so Beck and Nunag provided Na'im with pain medication, gave him a ketorolac injection to manage pain, and placed his finger in a splint. At Beck's direction, Nunag requested approval for Na'im to see an orthopedic surgeon. Na'im consulted with an orthopedic surgeon on June 14, and the surgeon reset the finger on June 24.

---

[*]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas, now deceased, adopting the recommended disposition of the Honorable Benecia B. Moore, United States Magistrate Judge for the Eastern District of Arkansas.

During the relevant time period, the Department of Corrections maintained and published an Inmate Grievance Procedure policy for the resolution of inmates' complaints. At the first step, an inmate submits a written complaint to facilitate potential informal resolution of the matter. The policy directs inmates to "write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses."

If an inmate is not able to resolve the matter informally, then he may proceed to the second step of filing a formal complaint. The formal complaint must be limited to the issues specified in the step-one grievance, and the policy specifies that "[a]ny new issues added to the form will not be considered." When the grievance is medical, a health services administrator receives and responds to the formal grievance. If an inmate disagrees with the administrator's response, then the inmate may appeal the issue to a prison director.

Na'im submitted a grievance relating to his dislocated finger. He filed a step-one grievance on May 17, 2021, as follows:

> I had an X-Ray on my hand because my finger was dislocated and have a torn ligament. It has been injured since 5/12/21 and the infirmary has allowed me to go unseen by a provider and/or doctor. The nurse have assigned me 800 mg of Ibuprofen and Tylenol 3 for pain and I still have not seen a doctor or provider and I am still in severe pain.

A prison staff member responded: "You are currently scheduled to see the provider on 5/19/21."

On May 27, after Beck tried to realign the finger, Na'im filed a step-two formal grievance. He conveyed that he was still in "severe pain" and unable to use his injured hand. The administrator concluded on July 2 that Na'im's grievance was without merit:

Records reflect you were seen by APN Nunag on 5/19/21, your x-ray was reviewed with you. APN Nunag consulted with Dr. Beck, you were given Toradol for pain and Dr. Beck attempted to align your dislocated finger. He was unsuccessful in this attempt. The Providers ordered a finger splint and entered a consult request for an evaluation by an orthopedic doctor. You were seen via telemed on 6/14/21 a recommendation for possible surgical intervention made and an appointment was scheduled and held on 6/24/21.

In conclusion, you have been seen and received treatment for your finger injury, there was no delay in treatment; therefore I find this grievance without merit.

Na'im appealed the administrator's decision to a prison director. Na'im complained about a week-long delay between his injury on May 12 and the medical appointment on May 19. He cited the time elapsed between the May 19 appointment and his surgery on June 24. Na'im also asserted that the attempts to realign his finger may have injured or damaged it further. The director responded to Na'im's appeal on August 9, 2021:

Your appeal states you were injured on May 12, 2021 and were not seen until May 19, 2021. You state Dr. Beck and APN Nunag tried to set it and put it in a splint until you were seen by the orthopedist via telemedicine on June 14, 2021. You state you had your finger surgically reset on June 24, 2021. You stated the whole process took 43, days, which is an unreasonable delay. You state you are still going back and forth to UAMS.

According to the grievance policy, an appeal cannot raise new or additional issues or complaints.

The medical department appropriately addressed your complaint as you were seen in sick call on May 12, 2021 as a walk-in for your finger and

referred to the provider, which you were seen by on May 19, 2021; therefore, this appeal is without merit.

Na'im sued and alleged that members of the prison medical staff were deliberately indifferent to his serious medical need arising from the dislocated finger. Na'im alleged that he suffered pain and further injury due to the delay in treatment for his finger and the attempt to realign the dislocated finger.

The district court determined that Na'im failed properly to exhaust the claims alleging delay of care and dismissed those claims against all defendants. The court granted summary judgment for Beck and Nunag on the claim regarding care administered on May 19. Na'im appeals only the dismissal of his claims against Beck and Nunag.

## II.

The Prison Litigation Reform Act provides that no action shall be brought by a prisoner with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). And "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

On appeal, Na'im contends that he exhausted a claim against Beck and Nunag based on alleged delay in medical care between May 12 and May 19. He argues that the "crux" of his grievance was always the lack of timely care, and that this claim of delay was exhausted and addressed by prison officials.

We conclude that Na'im failed to exhaust a claim against Beck and Nunag for alleged delay because he did not name them as persons who allegedly violated his rights by causing delay. The prison policy requires that a grievance must

"specifically name each individual involved in order that a proper investigation and response may be completed." The grievance form direct inmates to list the "name of personnel involved." The policy also warns inmates that if they do not "exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit," then the lawsuit will be dismissed.

During the grievance process, Na'im did not name Beck and Nunag as individuals allegedly responsible for delay between his injury on May 12 and his medical visit on May 19. Na'im's step-one grievance states that "*the infirmary* has allowed me to go unseen by a provider and/or doctor," and it mentions only an unnamed nurse who provided him with pain medication on May 12. Na'im's step-two formal grievance also did not name Beck or Nunag.

Na'im maintains that a claim against Beck and Nunag was nonetheless exhausted because prison officials resolved such a claim on the merits. This court has said that "a grievance that could have been denied for failure to comply with a procedural requirement is nonetheless exhausted for PLRA purposes if the institutional decision-maker instead denied it on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (per curiam).

Neither the administrator nor the director, however, addressed whether Beck and Nunag impermissibly delayed the provision of care between May 12 and May 19. The administrator considered Na'im's complaint that "the infirmary" unreasonably delayed, and concluded that "there was no delay in treatment." The decision did not discuss any role that Beck or Nunag played in scheduling Na'im's medical care between May 12 and May 19. On a step-three grievance appeal, the director concluded that "[t]he medical department appropriately addressed your complaint as you were seen in sick call on May 12, 2021 as a walk-in for your finger and referred to the provider, which you were seen by on May 19, 2021; therefore, this appeal is without merit." Again, the decision did not identify Beck and Nunag as the focus of

-6-

the grievance or address what role, if any, either of them played in determining the timing of Na'im's care. Na'im did not properly exhaust a claim against Beck and Nunag based on alleged delay between May 12 and May 19.

Nor did Na'im exhaust a claim against Beck and Nunag for delay between the medical visit on May 19 and the surgery on June 24. Na'im's step-one and step-two grievances did not complain about delay during that period, so the administrator's finding that the grievance was "without merit" did not address or exhaust such a claim. The director's decision on the step-three grievance appeal also did not address delay between May 19 to June 24 on the merits. The prison's grievance policy states that any new issues added to the grievance after step one "will not be considered." The director's decision on the grievance appeal acknowledged that Na'im's appeal complained of the delay between May 19 and June 24, but then concluded that "[a]ccording to the grievance policy, an appeal cannot raise new or additional issues or complaints." The decision, in a freestanding paragraph, addressed on the merits only the care administered on May 12 and May 19.

## III.

Na'im next challenges the district court's grant of summary judgment for Beck and Nunag regarding the care administered on May 19. Na'im exhausted his administrative remedies on this claim. To prevail on an Eighth Amendment claim of deliberate indifference to a medical need, Na'im must show that he suffered from an objectively serious medical need and that prison officials actually knew of, but deliberately disregarded, that need. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). There is no dispute that Na'im's dislocated finger resulted in a serious medical need.

To make a submissible case of deliberate indifference, Na'im must present sufficient evidence to support a finding that Beck and Nunag recognized that a

substantial risk of harm existed and knew their conduct was inappropriate in light of that risk. *De Rossitte v. Correct Care Sols., LLC.*, 22 F.4th 796, 802 (8th Cir. 2022). This subjective standard is akin to criminal recklessness. *Id*. Negligence or disagreement with treatment decisions does not rise to the level of a constitutional violation. *Cejvanovic v. Ludwick*, 923 F.3d 503, 507 (8th Cir. 2019).

Na'im argues that Beck and Nunag were deliberately indifferent because they "took turns repeatedly snatching and jerking Mr. Na'im's finger" despite an x-ray technician's recommendation that Na'im should be taken to the hospital. Na'im further argues that the attempts to realign his finger amounted to a wanton infliction of unnecessary pain.

The record does not support Na'im's claim that Beck and Nunag were deliberately indifferent. Beck and Nunag treated Na'im's dislocation by attempting to realign the finger. They addressed Na'im's pain on May 19 by prescribing Ibuprofen and administering a ketorolac injection immediately after their attempts to realign the finger. When the attempts to realign the finger failed, Dr. Beck also ordered an orthopedic consultation for Na'im, and nurse Nunag submitted the request on the same day.

A defense expert, Dr. Shipley, opined that "the medical care and treatment provided to Mr. Na'im by Dr. Beck and Nurse Nunag on May 19, 2021 was appropriate, adequate and timely." "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." *Dulany*, 132 F.3d at 1240. That an x-ray technician might have proceeded differently does not support a finding that the physician and nurse were deliberately indifferent. A debatable treatment decision does not meet the demanding standard for deliberate indifference under the Eighth Amendment.

The record shows Dr. Beck and Nunag addressed Na'im's pain, attempted to correct his finger's dislocation, and referred Na'im to an orthopedic surgeon upon determining the finger could not be realigned in the prison infirmary. No reasonable jury could find Beck and Nunag were deliberately indifferent to Na'im's serious medical need on May 19.

The judgment of the district court is affirmed.

_____